**Affirmed and Memorandum Opinion filed May 11, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00438-CV

---

## SUNNOVA ENERGY CORP., Appellant

## V.

## SPRUCE LENDING, INC., KILOWATT SYSTEMS, LLC, AND CPF ASSET MANAGEMENT, LLC, Appellees

---

### On Appeal from the 127th District Court
### Harris County, Texas
### Trial Court Cause No. 2018-77912

---

## MEMORANDUM OPINION

In one issue in this interlocutory appeal, we must decide whether the trial court abused its discretion in denying a motion to compel arbitration when the trial court was required to determine whether there was clear and unmistakable evidence of the parties' intent to submit the matter to arbitration based on heavily redacted copies of the agreements at issue provided to the trial court. We conclude that the movant did not prove it was entitled to an order compelling arbitration

under these circumstances. We affirm the trial court's order denying the motion without prejudice to the movant's ability to be heard on the merits of a subsequent motion to compel.[1]

## *Background*

Spruce Lending, Inc., Kilowatt Systems, LLC, and CPF Asset Management, LLC (collectively, "Spruce") hired Sunergy Construction Inc. to install solar power systems. Spruce leases and finances residential solar power systems and works with local contractors to install the systems. Two agreements govern Spruce's relationship with Sunergy. The first agreement was entered between CPF Asset Management and Sunergy. It involves solar power systems leased by consumers from Kilowatt. The second agreement was entered between Spruce Lending and Sunergy and involves solar power systems purchased from and financed by Spruce (collectively, the "Sunergy Agreements").

After approximately two years of working together, Spruce informed Sunergy that it intended to stop leasing and financing solar power systems. At the time, Spruce had 117 existing deals with Sunergy that Spruce contends had been substantially completed and could not be transferred to another financing company. Despite this, Sunergy purportedly transferred 88 of these deals to Spruce's competitor, Sunnova. Spruce sent Sunergy a cease and desist letter and copied Sunnova. Spruce alleged that Sunergy had steered customers away from Spruce and toward Sunnova, purportedly in violation of the Sunergy Agreements. Spruce

---

[1] This is an issue we have already addressed. *See Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 391 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In that case, the nonmovant objected to the movants' failure to provide the entire agreement at issue. *Id*. Here, the parties agreed to provide redacted copies of the relevant agreements, but the movant was still required to meet its burden establishing clear and unmistakable evidence of the parties' intent to submit the matter to arbitration. As discussed, the movant cannot meet that burden without providing copies of the relevant agreements in their entirety.

also sent a demand letter to Sunnova demanding that Sunnova "immediately return [residential solar system sites] to Spruce."

Spruce subsequently sued Sunnova for tortious interference with contract, declaratory relief, conversion, and unjust enrichment, contending that Sunnova interfered with both the Sunergy Agreements and contracts between Spruce and its end consumers ("Customer Agreements"). Sunnova moved to compel arbitration on Spruce's claims based on arbitration clauses in the Sunergy Agreements and Customer Agreements. These agreements include similar arbitration provisions and incorporate either the JAMS Comprehensive Arbitration Rules or the JAMS Streamlined Arbitration Rules.[2] Spruce opposed Sunnova's motion to compel arbitration on the basis that Sunnova was not a signatory to the relevant contracts. After a hearing, the trial court denied Sunnova's motion to compel arbitration and stay proceedings.

## *Discussion*

In one issue, Sunnova contends that the trial court abused its discretion in denying the motion to compel arbitration because the question of arbitrability must be referred to the arbitrator under the JAMS rules. Sunnova also asserts that if the court reaches the question of arbitrability, it should conclude that Sunnova can invoke the arbitration provisions and Spruce's claims fall within the scope of the arbitration provisions. Spruce argues that Sunnova waived its argument that the question of arbitrability must be referred to the arbitrator and that as a nonsignatory, Sunnova cannot compel arbitration because it is "a complete stranger to the contracts." We address Spruce's waiver argument first.

---

[2] The agreements are governed by the Federal Arbitration Act (FAA). The FAA permits an interlocutory appeal from an order denying a motion to compel arbitration. *See* 9 U.S.C.A. § 16(a); *see also In re Helix Energy Sols. Grp., Inc.*, 303 S.W.3d 386, 395 n.7 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).

3

## I. The issue is not waived.

Spruce contends that Sunnova did not preserve for review its argument that the JAMS rules delegate to the arbitrator the issue of whether a nonsignatory can compel arbitration. *See* Tex. R. App. 33.1(a) (requiring complaint to be presented to trial court "by a timely request, objection, or motion" as a prerequisite to presenting complaint on appeal). But Spruce concedes, "Sunnova did argue that the parties had agreed that the arbitrator would decide arbitrability because they incorporated the JAMS rules." That argument, presented in Sunnova's motion to compel arbitration, is the same argument Sunnova makes on appeal.[3] Whether a nonsignatory can compel arbitration is a question of arbitrability. The fact that Sunnova is a nonsignatory is obvious, and that fact was discussed in the trial court.[4] Spruce's waiver argument is therefore without merit. We turn to Sunnova's appellate issue.

## II. The trial court did not abuse its discretion on this record.

As mentioned, Sunnova contends that by incorporating the JAMS rules into the Sunergy Agreements and Customer Agreements, Spruce agreed the arbitrator would decide whether the claims against Sunnova, as a nonsignatory, are arbitrable. We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We must uphold an order denying arbitration if it is proper on any basis considered by the trial court. *Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 395 (Tex.

---

[3] Sunnova also cited the applicable JAMS rules in its motion to compel arbitration.

[4] Spruce asserts that at the hearing, Sunnova "never argued that the trial court should defer the decision to the arbitrator." But the trial court made note of Sunnova's argument during the hearing that "[t]he scope of arbitrability goes to the arbitrator." Moreover, Sunnova raised the issue in its motion to compel ("[P]rovisions that incorporate arbitration rules, such as JAMS, that 'empower an arbitrator to decide issues of arbitrability . . . serve[] as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" (citations omitted)).

App.—Houston [14th Dist.] 2014, no pet.); *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 854 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding).

We review a trial court's arbitrability determinations de novo. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631 (Tex. 2018). "Parties can . . . agree to arbitrate arbitrability." *Id.* We presume adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit the matter to arbitration. *Id.* This standard follows "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration" and protects unwilling parties from compelled arbitration of matters they reasonably expected a judge, not an arbitrator, would decide. *Id.* We look to the parties' agreements to determine whether they agreed to arbitrate arbitrability. *See id.*

The Sunergy Agreements and the Customer Agreements include broad language providing that arbitration will be "administered by JAMS" under its arbitration rules. Accordingly, the JAMS rules were incorporated into the Sunergy Agreements and Customer Agreements. *See LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 728 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding agreement to arbitrate exists when signed contract incorporates by reference another document with arbitration clause). Under the JAMS rules, the arbitrator has the authority to arbitrate "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration." JAMS Comprehensive Arbitration Rule 11(b), https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11 (last visited Apr. 14, 2021); JAMS Streamlined Arbitration Rule 8(b), https://www.jamsadr.com/rules-streamlined-arbitration/#Rule8 (last visited Apr.

5

14, 2021). Sunnova contends that the grant of power to the arbitrator to determine the proper parties to the arbitration means that the arbitrator has the authority to determine whether nonsignatories are properly before the arbitrator.

In *Jody James Farms*, the supreme court construed an arbitration agreement and language under the American Arbitration Association rules that was incorporated into the arbitration agreement. *See* 547 S.W.3d at 631. The court concluded, "Determining whether a claim involving a non-signatory must be arbitrated is a gateway matter for the trial court, not the arbitrator, which means the determination is reviewed de novo rather than with the deference that must be accorded to arbitrators."[5] *Id*. at 629.

Spruce contends that this case is just like *Jody James Farms*, and questions of arbitrability as to claims against Sunnova must be determined by the court because Sunnova is a nonsignatory. Sunnova contends that *Jody James Farms* is distinguishable because the AAA rules "do not delegate any specific authority for

---

[5] In that case, Jody James Farms purchased an insurance policy from Rain & Hail, LLC, which included an arbitration clause that incorporated the AAA rules. *Jody James Farms*, 547 S.W.3d at 629, 631. The policy was purchased through the Altman Group, an independent insurance agency, which was not a signatory to the agreement. *Id*. at 629. After Jody James Farms timely reported crop loss to the Altman Group, Rain & Hail denied the claim in part because it purportedly did not receive timely notice of the claim from the Altman Group. *Id*. at 629-30. Jody James Farms and Rain & Hail arbitrated their dispute, and Jody James Farms lost. *Id*. at 630.

Jody James Farms then sued the Altman Group and its agent for breach of fiduciary duty and deceptive trade practices. *Id*. Altman and the agent successfully moved to compel arbitration under the insurance policy, the claims went to arbitration, and the arbitrator resolved the dispute in Altman and the agent's favor. *Id*. On appeal, the court of appeals held that an arbitration agreement incorporating the AAA rules was evidence of a clear and unmistakable intent to arbitrate arbitrability because under the AAA rules, an "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence . . . of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id*. at 631. The supreme court disagreed, holding that "[e]ven when the party resisting arbitration is a signatory to an arbitration agreement, questions related to the existence of an arbitration agreement with a non-signatory are for the court, not the arbitrator." *Id*. at 632.

6

the arbitrator to determine the proper parties to an arbitration, providing instead only that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence[, scope, or validity] of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" *See id*. at 631. According to Sunnova, the JAMS rules include an extra grant of arbitral authority to determine who the parties to the arbitration are and thus the JAMS rules provide "clear and unmistakable evidence that [the signatories] agreed to arbitrate arbitrability in disputes with non-signatories." *See id*. at 632-33.

Sunnova's argument is compelling. But, as the supreme court noted, "an agreement silent about arbitrating claims against non-signatories does not unmistakably mandate arbitration of arbitrability in such cases." *Id*. at 632. The supreme court examined the language of the entire agreement to determine (1) whether the parties expressed an intent to arbitrate arbitrability with respect to nonsignatories, and (2) whether the agreement incorporated the AAA rules only for disputes between signatories or also for disputes with nonsignatories. *See id*. at 632-33.

Strong policies and presumptions favor arbitration. *Branch Law Firm*, 447 S.W.3d at 394 (citing *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995)). But because arbitration is a creature of contract, a court must apply state law principles of contract to decide whether an agreement to arbitrate has been reached. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) ("Arbitration agreements are interpreted under traditional contract principles."); *Branch Law Firm*, 447 S.W.3d at 394 (citing *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008), and *Am. Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 273 (Tex. App.—Houston [14th Dist.] 2004, no pet., consolidated appeal and orig. proceeding)). Despite the strong policy in favor of arbitration, an arbitration clause

will not reach beyond the scope intended by the parties. *Branch Law Firm*, 447 S.W.3d at 395 (citing *Osornia v. AmeriMex Motor & Controls*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). While an arbitration clause standing alone might appear to encompass the claims in question, a court must examine all the terms of the parties' agreement. *J.M. Davidson*, 128 S.W.3d at 229 ("To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."); *Branch Law Firm*, 447 S.W.3d at 395.

Courts cannot give any single provision taken alone controlling effect; rather all provisions must be considered with reference to the whole instrument. *J.M. Davidson*, 128 S.W.3d at 229; *Branch Law Firm*, 447 S.W.3d at 396. This is so because even though the wording of an arbitration clause may be broad, its scope may be limited elsewhere in the agreement in which the parties could unambiguously "negate or limit the arbitration clause with respect to a given matter in dispute." *Branch Law Firm*, 447 S.W.3d at 395.

In *Jody James Farms*, the supreme court considered the entire agreement at issue, in conjunction with the AAA rules, to determine whether the parties expressed any intent to arbitrate arbitrability in disputes with nonsignatories. 547 S.W.3d at 632-33. Sister courts have similarly recognized that courts must examine the parties' entire agreement to construe an arbitration agreement. *See, e.g., United Healthcare of Tex., Inc. v. Low-T Physicians Serv., P.L.L.C.*, No. 02-20-00033-CV, 2021 WL 210846, at *5–6 (Tex. App.—Fort Worth Jan. 21, 2021, no pet. h.) (mem. op.) ("[E]ven though an arbitration clause might appear to encompass the claims in question, the court cannot confine its analysis to the construction of that clause alone. The court must examine the entire agreement."); *Daniel K. Hagood, P.C. v. Kapai*, No. 05-18-01485-CV, 2019 WL 4010778, at *4 (Tex. App.—Dallas

Aug. 26, 2019, pet. denied) (mem. op.) (same).

Here, the Sunergy Agreements and Customer Agreements attached to Sunnova's motion to compel arbitration were "redacted for confidentiality purposes" and included only the "dispute resolution clauses." That is not enough information for us to determine whether the parties expressed an intent to arbitrate arbitrability as to nonsignatories and whether the agreements incorporated the JAMS rules only for disputes between signatories or also for disputes with nonsignatories. Even if the JAMS rules provide some evidence supporting these factors, which we need not decide, we cannot look at the arbitration portion of the agreements in a vacuum.

Because Sunnova sought to compel arbitration, it bore the burden to prove with clear and unmistakable evidence that the parties to the agreements intended to arbitrate arbitrability as to claims against nonsignatories. *See Jody James Farms*, 547 S.W.3d at 631. While the arbitration clauses along with the JAMS rules, standing alone, might appear to address this issue, we cannot confine our analysis to those limited portions of the Sunergy Agreements and Customer Agreements. *See id.* at 632-33 (considering entire agreement in context); *see also Branch Law Firm*, 447 S.W.3d at 395.

The record does not reflect that Sunnova submitted the Sunergy Agreements and Customer Agreements in their entirety to the trial court. In the absence of this evidence, neither this court nor the trial court could determine whether the parties intended to arbitrate arbitrability as to claims against nonsignatories. On this record, we cannot say Sunnova met its burden to show it was entitled to an order compelling arbitration. *See Branch Law Firm*, 447 S.W.3d at 398.

Sunnova also contends that if the court decides the merits of the arbitrability issue, we should conclude the arbitration agreements are broad enough to send

9

Spruce's claims to arbitration. Whether the arbitrator can determine arbitrability as to nonsignatories is a threshold issue that we cannot resolve without examining the agreements in their entirety. Likewise, we cannot reach the merits of the arbitrability determination and address whether Sunnova may invoke the arbitration provisions without the benefit of the entire agreements. *See id*. Because this threshold issue is dispositive of the appeal, we do not reach the rest of Sunnova's arguments. *See id*. at 399. We overrule its sole issue on appeal.

## *Conclusion*

We affirm the trial court's order denying Sunnova's motion to compel arbitration and stay proceedings.

/s/    Frances Bourliot
       Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.