**Affirmed and Opinion filed September 12, 2024.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-23-00586-CV

**BP AMERICA PRODUCTION COMPANY, Appellant**

**V.**

**SIMCOE LLC, Appellee**

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-02516**

## O P I N I O N

When appellee Simcoe LLC initiated arbitration of certain claims against BP America Production Company, BP argued that the claims were not arbitrable, and the arbitrator agreed. Then Simcoe brought the same claims in the trial court, and the parties switched positions: BP moved to compel arbitration, and Simcoe opposed the motion. The trial court independently reached the same conclusion as the arbitrator and denied the motion to compel arbitration. In this interlocutory appeal, BP challenges that ruling, arguing that the trial court erred in that (1) the claims are

arbitrable under the plain terms of the agreement, (2) the claims are factually intertwined with claims in arbitration, and (3) the ruling was based on the arbitrator's lack of legal training rather than on the agreement's terms.

We conclude that the unambiguous arbitration provision is narrowly tailored to apply only to carefully circumscribed disputes, over which the arbitrator will act "as an expert for the limited purpose of determining the specific disputed [matter]." Because we can say with positive assurance that the limited reach of the arbitration provision cannot be stretched far enough to reach the claims at issue, we affirm the trial court's ruling.

## I. BACKGROUND

BP America Production Company sold Simcoe LLC a number of BP's oil-and-gas-producing properties and partnership interests in New Mexico and Colorado. This case primarily concerns two agreements related to that sale: the Purchase and Sale Agreement (PSA) and the Transition Services Agreement (TSA).

### A. The Agreements' Allocation of the Transferred Properties' Revenue and Expenses

The primary document governing the transaction is the Purchase and Sale Agreement (PSA), under which the purchase price was subject to a number of adjustments. Broadly speaking, the PSA provided that Simcoe was entitled to all revenues and accounts receivable from the properties, and responsible for all costs and expenses attributable to the properties, that were earned or incurred from the PSA's "effective time"[1] to the closing of the sale on February 28, 2020. We will call this the "Pre-Closing Period." These amounts were to be accounted for through adjustments to the purchase price. To account for these adjustments, BP was to

_____

[1] The effective time was 12.01 a.m. on April 1, 2019.

provide Simcoe a Preliminary Settlement Statement before closing, using estimates when necessary. Much later, BP would prepare a Final Settlement Statement for use in further adjusting or correcting the purchase price.

Upon closing, a second agreement—the Transition Services Agreement (TSA)—became effective. Under the TSA, BP would operate the properties and perform other services for Simcoe's benefit for several months—the "Transition Period"—after the sale closed.[2] Just as the PSA allocated to Simcoe the properties' revenues and expenses paid or incurred during the Pre-Closing Period, the TSA allocated to Simcoe the properties' revenues and expenses paid or incurred during the Transition Period. Those amounts had not been included in the purchase price but were reported in monthly settlement statements. The Transition Period was followed by a twelve-month "Audit Period," during which Simcoe could audit the monthly settlement statements and "seek reimbursement from [BP] for any aggregate net amount of all charges in error" by delivering to BP a written notice "describing any alleged error in charges."[3] If the parties failed to agree "on the existence or amount of such retroactive adjustment for charges in error," then the parties were required to "submit such disputed matters to the Accounting Referee" in the procedure described in section 6.6 of the PSA.

Section 6.6 is one of four arbitration provisions in the PSA. Depending on the type of dispute, parties could invoke the procedures for a final, binding resolution by a Casualty Loss Referee, an Environmental Referee, a Title Referee, or an Accounting Referee. Each such provision states that the Referee "shall act as an expert for the limited purpose of determining the specific disputed [matter] . . . and

---

[2] The Transition Period ended and the TSA terminated on December 31, 2020, unless Simcoe provided notice of its intent to terminate the TSA at the end of an earlier calendar month. The record suggests that the TSA terminated at the end of November 2020.

[3] TSA, § 19(b), (d).

may not award any damages . . . or penalties to any Party with respect to any matter."[4]

Under the PSA, any items in the Final Settlement Statement that are disputed and not timely resolved by the parties must be submitted to a nationally recognized accounting firm as Accounting Referee. The Accounting Referee resolves the disputed items based on the parties' written position and rebuttal statements and any additional information provided at the Referee's request. No oral testimony or oral argument is presented.

The TSA makes the same procedure applicable to charges in error that were included in monthly settlement statements for the Transition Period.

## B.     The Dispute

In the PSA, BP represented and warranted that it had disclosed all "Material Contracts" and made complete copies of all such contracts available to Simcoe. "Material Contracts" were defined to include gathering contracts that involved receipts or payments by BP of more than a million dollars a year and that were not terminable without penalty on thirty days' notice or less. According to Simcoe, BP failed to adequately disclose the "V3600 Contract," which is a gathering contract meeting the definition of a "Material Contract." BP paid directly for the services provided under this contract and included reimbursement for those charges in the purchase price (if paid or incurred during the Pre-Closing Period) or the monthly settlement statements (if paid or incurred during the Transition Period). Simcoe disputed both. The parties were unable to resolve the dispute and agreed to employ

---

[4] Subject to those provisions, the parties irrevocably submitted to the exclusive jurisdiction of the federal courts in Harris County, Texas, but to the extent that federal jurisdiction was unavailable or a federal court remanded a dispute to state court, then the parties agreed that such dispute would be determined exclusively in the state courts of Harris County.

4

the accounting firm Grant Thornton LLP as Accounting Referee in the person of Bryan C. Moser.

## C.    The First Arbitration

According to the Accounting Referee's letter of April 7, 2022, communicating his final decision, Simcoe disputed the portion of the Final Settlement Statement addressing "expenses, capital expenditures, and accounts receivable." Specifically, Simcoe asserted that BP failed to adequately disclose Gathering Contract V3600, a Material Contract that BP was required to disclose. Using two monthly invoices, Simcoe calculated a daily average expense of the V3600 Contract for 2019 and for 2020, and based on those calculations, sought to reduce the purchase price by the total amount of expenses attributable to the V3600 Contract during the Pre-Closing and Transition Periods. BP argued, among other things, that "Accounting Referee is not permitted to settle this disputed item."

The Accounting Referee agreed with BP's arbitrability argument, stating, "Accounting Referee does not make a determination on whether the Material Contracts were adequately disclosed because that is not within the area of responsibility the PSA defines for the Accounting Referee." The Accounting Referee nevertheless addressed some matters that do not appear to have been disputed. For example, he determined "whether the financial impacts of [the V3600 Contract] were accurately reported in the Final Settlement Statement," but he acknowledged that Simcoe "does not dispute the value of Gathering Contract V3600 presented in the [Final Settlement Statement]." The Accounting Referee further stated that Simcoe "has not demonstrated that the Purchase Price adjustments are dependent on documentation submitted in the [virtual data room]" that served as a repository for Material Contracts, Simcoe sought an adjustment to the purchase price based on BP's alleged failure to submit documentation to the virtual data room.

**D.  The Second Arbitration**

In the First Arbitration, the Accounting Referee held that costs incurred during the Transition Period were not subject to "this dispute resolution process," which addressed challenged Pre-Closing expenses. Apparently anticipating that result, Simcoe instituted a Second Arbitration while the First Arbitration was still pending. After the First Arbitration concluded, Simcoe added the dispute concerning the nondisclosure of the V3600 Contract to the list of matters to be resolved in the Second Arbitration.

**E.  This Lawsuit**

While the First Arbitration was pending, BP filed this lawsuit concerning another document associated with the BP-Simcoe transaction.

Because the Southern Ute Indian Tribe's consent was needed to transfer and extend a number of expiring easements included among the property interests Simcoe purchased from BP, the parties entered into a side Letter Agreement allocating the responsibilities and costs of obtaining such consent. Unlike the PSA and TSA, the Letter Agreement does not mention any type of alternative dispute resolution. When Simcoe threatened to sue BP for breach of the Letter Agreement, BP preemptively filed this lawsuit seeking a declaration that BP has not breached the Letter Agreement and has no liability under it.

After the First Arbitration concluded, Simcoe amended its counterclaims in this lawsuit to seek judicial resolution of the same issue Simcoe had raised in two arbitrations. Simcoe again alleged that BP's failure to disclose the V3600 Contract caused Simcoe to incur unexpected additional operating expenses, and based on the alleged nondisclosure, Simcoe asserted claims for breach of the PSA, negligent misrepresentation, fraud, and fraudulent inducement (the "Nondisclosure Claims").

BP moved to compel arbitration of Simcoe's Nondisclosure Claims, pointing out that Simcoe had already included the identical claims in one completed and one pending arbitration. The trial court denied the motion, and BP brought this interlocutory appeal.

## II. GOVERNING LAW

Both the PSA and TSA involve interstate commerce, and both contain provisions specifying that Texas substantive law applies to all disputes arising out of the agreements, the subject-matter of the agreements, and the relationship of the parties created by the agreements. Thus, the Federal Arbitration Act and the Texas Arbitration Act apply concurrently to the arbitration provisions at issue. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 338 n.7 (5th Cir. 2004). Our analysis is the same under either statute. *See Garg v. Pham*, 485 S.W.3d 91, 101 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

A party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims at issue fall within the agreement's scope. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). The burden then shifts to the resisting party to prove a defense to the arbitration agreement's enforcement. *Id.* In determining whether the dispute is within the scope of the arbitration agreement, courts focus on the factual allegations rather than the legal causes of action asserted. *Id.* Any doubts about the arbitration agreement's scope are resolved in favor of arbitration. *Id.*

This question of arbitrability is a matter for a court to decide unless the parties have agreed to delegate arbitrability issues to the arbitrator. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701–02 (Tex. 2023). If the parties did not agree to delegate that responsibility to the arbitrator, "then the court should decide that question just as it would decide any other question the parties did

not submit to arbitration, namely, independently." *Id.* at 702 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). In this proceeding, no one disputes that arbitrability is a question for the trial court to decide.

We review a trial court's interlocutory order denying a motion to compel arbitration for abuse of discretion, deferring to the trial court's factual determinations if they are supported by the evidence and reviewing questions of law de novo. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).

## III. EXISTENCE OF A VALID ARBITRATION AGREEMENT

Both parties acknowledge the existence and validity of the contracts at issue and of the "Accounting Referee" arbitration provision stated in the PSA and incorporated by reference in the TSA. Simcoe asserts in its live pleading that the PSA and TSA "are valid, enforceable contracts," and it has twice invoked the "Accounting Referee" arbitration provision. The proceedings that provision describes meets the definition of "arbitration." *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (orig. proceeding) (defining arbitration as a contractual proceeding in which parties to a controversy voluntarily select arbitrators of their own choice to whom the controversy is submitted for final resolution); *Arbitration*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute."). Indeed, in rendering a final decision in the First Arbitration, the Accounting Referee referred to himself as the "Arbitrator." The parties' dispute instead is focused on the scope of the arbitration provisions.

8

## IV. Scope of the Arbitration Provisions

Once the existence of a valid arbitration agreement is established, a presumption in favor of arbitration arises, so that any doubts about the arbitration agreement's scope are resolved in favor of arbitration. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021). The presumption "is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). The trial court correctly concluded that the arbitration provisions do not encompass Simcoe's Nondisclosure Claims.

The arbitration clause at issue is not susceptible of the broad interpretation urged by BP. Unlike the broad arbitration clauses at issue in the authorities on which BP relies, the accounting arbitration provision at issue here, PSA section 6.6, is narrowly tailored. It provides as follows:

Within 180 days after the end of the Transition Period, BP must deliver to Simcoe a Final Settlement Statement " setting forth the adjustments to the Closing Purchase Price pursuant to this Article VI and any other adjustments to the Closing Purchase Price and the Deferred Purchase Price *expressly permitted hereunder*."[5] Simcoe then has thirty days to deliver to BP "a written report containing any changes that [Simcoe] proposes in good faith to be made to such statement, stating in reasonable detail its objections and the amounts to which it objects." If the parties do not agree on final adjustments to the Final Settlement Statement within sixty days

---

[5] Emphasis added. As defined in the PSA, "hereunder" is a reference to the PSA as a whole.

after BP receives Simcoe's report, then either party may submit "the disputed items for resolution" to the Accounting Referee.

At this point, the process accelerates. Within ten business days after receipt of the notice to the Accounting Referee, each party may submit "a position statement on such disputed items" to the Accounting Referee and the other party. At the end of that period, each party has a further ten business days to submit a rebuttal statement to the other party's position statement. Within thirty days after the rebuttal period, the Accounting Referee must resolve the disputed items in writing. "The Accounting Referee shall act as an expert for the limited purpose of determining the specific disputed matter submitted by either Party" and "shall address only those items in dispute." The Accounting Referee may request any additional information from the parties that the Accounting Referee deems appropriate but must resolve the disputed items on the parties' written submissions, without taking testimony or hearing oral argument. The Accounting Referee resolves disputed "accounting adjustments" and is not authorized to " award damages or penalties to either [p]arty with respect to any matter."

To summarize, PSA section 6.6 provides that adjustments to the purchase price in the Final Settlement Statement are those made pursuant to Article VI and those "expressly permitted" in the PSA. Disputes about such adjustments to the purchase price can be submitted to the Accounting Referee, who will act as an expert *for the limited purpose* of determining the specific disputed matter," and nothing else. The TSA incorporates the PSA and provides that Simcoe can audit the Monthly Settlement Statements for Transitions Services and dispute alleged "charges in error." Unresolved disputes about "charges in error" are to be submitted to the Accounting Referee following the procedures of PSA section 6.6, *mutatis mutandis*.

Simcoe's Nondisclosure Claims fall well outside the narrow scope of the Accounting Referee's authority. The claims are not disputes about the accuracy of the Final Settlement Statement or the Monthly Settlement Statements but about whether BP disclosed all Material Contracts, and if so, whether the failure was negligent, fraudulent, or a material breach of contract. The Accounting Referee has no authority to determine any of those questions and no ability to award damages.

The broad forum-selection provisions to which the parties agreed are not the arbitration provisions, but this one:

> Subject to section 4.3(e) [the Title Referee provision], Section 5.2(d) [the Environmental Referee provision], Section 6.6 [the Accounting Referee provision], and Section 7.2(d) [the Casualty Referee provision], the Parties . . . hereby irrevocably submit to the exclusive jurisdiction of the federal courts located in Harris County, Texas (or (I) solely to the extent federal jurisdiction is not available or (II) if a federal court determines that any dispute or proceeding shall be remanded to state court, then in each such case, with respect to the matters specified in [subsections] (I) and (II) above, the state courts located in Harris County, Texas) *in connection with any dispute or proceeding arising under or relating to this agreement, the operative documents or any of the transactions contemplated hereby or thereby, that is permitted to be commenced in court*, and each Party irrevocably agrees that all Losses in respect of such dispute or proceeding that is permitted to be commenced in court shall be heard and determined exclusively in such courts.[6]

We agree with Simcoe that although the Nondisclosure Claims might fall within the scope of an expansive forum-selection provision such as the one above, the claims are not encompassed by the far more limited scope of the "Accounting Referee" provision. We overrule BP's first issue.

---

[6] PSA § 18.10(b) (emphasis added). The TSA's provision is nearly identical.

11

## V. FACTUALLY INTERTWINED CLAIMS

BP argues in its second issue that a court must compel arbitration when a party's claims are factually intertwined with claims that are already in arbitration. *See Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 74 (Tex. App.—Houston [14th Dist.] 2016, no pet.). That is true in cases involving broad arbitration clauses, but not in cases in which the parties have expressly circumscribed the arbitrator's role, as they have here. *Cf. Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 395 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (agreement may "significantly narrow the scope" of even a broad arbitration clause). As previously discussed, the Accounting Referee's "limited purpose" is to determine "the specific disputed matter," and "only those items in dispute." The disputes in question are disputed adjustments to the purchase price and allegedly erroneous charges in the Monthly Settlement Statements. The Nondisclosure Claims are not such disputes.

Because the parties have not agreed to arbitrate claims such as the Nondisclosure Claims, and the terms of PSA section 6.6 affirmatively bar the Accounting Referee from considering such matters, we overrule BP's second issue. *See TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 701–02 ("[P]arties cannot be compelled to arbitrate any controversy unless they have contractually agreed to do so.").

## VI. ARBITRATOR'S QUALIFICATIONS

In its third issue, BP contends that the trial court reversibly erred in partially denying BP's motion to compel arbitration based on the Accounting Referee's purported lack of legal training. Although the trial court made no factual findings, BP bases this assertion on some of the trial court's statements during the hearing on the motion to compel arbitration.

This argument is a red herring. Because the trial court issued no findings of fact or conclusions of law, we must uphold the trial court's denial of BP's motion to compel "on any legal theory that finds support in the evidence." *ETC Intrastate Procurement Co., LLC v. JSW Steel (USA), Inc.*, 620 S.W.3d 168, 173 (Tex. App.— Houston [14th Dist.] 2021, no pet.). It is immaterial whether the trial court's remarks during the hearing were erroneous, because right or wrong, they are not evidence and cannot be treated as findings of fact or conclusions of law. *Cf. In re W.E.R.*, 669 S.W.2d 716 (Tex. 1984) (per curiam) ("The court of appeals was not entitled to look to any comments that the judge may have made at the conclusion of a bench trial as being a substitute for findings of fact and conclusions of law."). Moreover, the arbitration agreements are unambiguous, and the interpretation of an unambiguous contract is a question of law we review de novo. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). As a matter of law, the arbitration provisions of the PSA and TSA are not susceptible of an interpretation that would cover the Nondisclosure Claims. The trial court properly denied BP's motion to compel arbitration, not because the trial court's comments at the hearing were correct, but because the plain text of the parties' agreements dictates this result.

We overrule BP's third issue.

## VII. CONCLUSION

Having overruled each of the issues presented, we affirm the trial court's order denying BP's motion to compel arbitration of Simcoe's Nondisclosure Claims.

/s/     Tracy Christopher
        Chief Justice

Panel consists of Chief Justice Christopher and Justices Spain and Poissant.

13