**Reversed and Remanded and Majority Opinion and Dissenting Opinion filed August 9, 2018.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-17-00483-CV**
**NO. 14-17-00540-CV**

---

**SOUTHERN GREEN BUILDERS, LP AND SAM SEIDEL, Appellants**

**V.**

**JAIME CLEVELAND, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-13499**

---

## M A J O R I T Y   O P I N I O N

Appellant Southern Green Builders, a residential home builder, sued appellee Jaime Cleveland, prospective homeowner, for breach of contract. Cleveland responded with a counterclaim against SGB, and a third-party claim against SGB's principal, appellant Sam Seidel. SGB and Seidel both moved to compel arbitration,

which the trial court denied.[1]  In a consolidated, accelerated, interlocutory appeal, SGB and Seidel argue the trial court erred in denying arbitration.  We agree.

## I.   Background

This is a residential construction dispute.  On September 30, 2015, Seidel, on behalf of SGB, entered in to a Residential Construction Contract (the "contract") to build for Cleveland the residence at 3424 Sunset Boulevard, Houston, Harris County, Texas, at an agreed price of $1,680,340.39.  The contract contained the following language regarding arbitration of disputes:

> 17.   RESOLUTION OF DISPUTES.   The Parties desire prompt, inexpensive and efficient dispute resolution procedures and therefore agree that their disputes shall be governed by the following:
>
> ***
>
> (c)  *Mediation-Binding Arbitration/Waiver of Jury Trial*.  The Owner and Builder agree that all controversies, claims (and any related settlements), or matters in question arising out of or relating to (i) this Contract, (ii) any breach or termination of this Contract, (iii) the construction of the Home and/or its repairs, (iv) any acts or omissions by the Builder (and its officers, directors or agents), and/or (v) any actual or purported representations or warranties, express or implied, relating to the Property and/or the Home (herein referred to collectively as a "Dispute") may be submitted to binding arbitration, but both parties shall also have the right to seek other legal remedies as they see fit and the law allows.
>
> ***
>
> 25.   ENTIRE AGREEMENT.   This Contract, together with all attachments, contains the entire understanding between Builder and Owner with respect to the construction of the Home, and replaces all prior agreements or understandings, if any. BUILDER IS NOT BOUND BY ANY STATEMENT, PROMISE, CONDITION OR

---

[1] In separate appeals, SGB (14-17-00483-CV) and Seidel (14-17-00540-CV) both seek enforcement of the same arbitration clause against the same party, Cleveland.  We granted an agreed motion to consolidate the appeals.

STIPULATION NOT SPECIFICALLY SET FORTH IN THIS CONTRACT. No representative of Builder has authority to make any oral statements that modify or change the terms and conditions of this Contract. OWNER REPRESENTS THAT OWNER HAS READ AND UNDERSTANDS THIS ENTIRE CONTRACT, INCLUDING THE AGREEMENT FOR BINDING ARBITRATION OF DISPUTES RELATED TO THIS CONTRACT (AS AMENDED). OWNER ALSO REPRESENTS THAT NO VERBAL STATEMENT, PROMISE OR CONDITION NOT SPECIFICALLY SET FORTH IN THIS CONTRACT IS BEING RELIED UPON BY OWNER. IT IS ACKNOWLEDGED THAT BUILDER IS RELYING ON THESE REPRESENTATIONS AND WOULD NOT ENTER INTO THIS CONTRACT WITHOUT THIS UNDERSTANDING.

During the construction of the residence, a dispute arose between the parties regarding payment and performance under the contract. On February 27, 2017, SGB filed a demand for arbitration of its rights as well as an original petition in the trial court, which was made subject to SGB's right to arbitrate.

In response, the Cleveland's asserted a counterclaim against SGB for fraud, Deceptive Trade Practices Act violations, negligent misrepresentation, breach of contract, breach of implied warranty, and a request for declaratory relief wherein they request the trial court to declare the arbitration language in the contract is permissive and does not compel Cleveland to arbitrate. Cleveland also added a third-party petition against appellant Sam Seidel, SGB's principal, for fraud, DTPA violations, and negligent misrepresentation.

SGB voluntarily dismissed the arbitration proceeding without prejudice and moved the trial court to compel arbitration under the contract. On May 19, 2017, the trial court held a hearing on SGB's motion to compel and, after taking it under advisement, denied the motion on June 7, 2017. Seidel also filed a motion to compel, requesting the trial court to compel arbitration of all claims under the contract. The trial court denied Seidel's motion without a hearing on July 6, 2017. SGB and Seidel

3

timely filed their respective notices of appeal, which were consolidated by this Court.

## II.    Analysis

The central focus of this appeal is whether the trial court erred in denying SGB and Seidel's motions to compel arbitration.  Appellants raise three issues: (1) is arbitration required when requested under this contract; (2) Does Cleveland's extrinsic evidence alter the express terms of the contract; and (3) do the parties' claims fall within the scope of the arbitration agreement?

## A.    Standard of review and substantive law

Section 171.098 of the Texas Civil Practice and Remedies Code permits the interlocutory appeal of an order denying a motion to compel arbitration.  Tex. Civ. Prac. & Rem. Code § 171.098(a)(1).  Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations *de novo*.  *In re Labatt Food Servs., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (citing *Brainard v. State*, 12 S.W.3d 6, 30 (Tex. 1999); *see Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992)).  Whether an arbitration agreement is enforceable is subject to de novo review.  *See id*. (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

"Courts cannot compel a party to arbitrate claims in the absence of an agreement to arbitrate." *Kehoe v. Pollack*, 526 S.W.3d 781, 791 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *In the Estate of Guerrero*, 465 S.W.3d 693, 699 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc)).  A party moving to compel arbitration bears the initial burden of proving the existence of an arbitration agreement.  *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); Tex. Civ. Prac.

4

& Rem. Code § 171.021(a)); *see also Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013) (The party moving to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of that agreement.). A party moving to compel a party who did not sign the arbitration agreement to arbitrate also bears the burden of establishing that the arbitration agreement binds the nonsignatory. *See Kehoe*, 526 S.W.3d at 791; *The Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 394 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Labatt Food Servs.*, 279 S.W.3d at 643 (when "arbitration agreement is silent about who is to determine whether particular persons are bound by the agreement, courts, rather than the arbitrator, should determine the issue").

The existence of a valid arbitration agreement is a legal question. *In re D. Wilson Constr.*, 196 S.W.3d 774, 781 (Tex. 2006). In interpreting an agreement to arbitrate, we apply ordinary contract principles. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id*. at 229. A trial court "has no 'discretion' in determining what the law is or applying the law to the facts." *In re D. Wilson Constr.*, 196 S.W.3d at 781 (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding)).

Once an agreement is established, a strong presumption favoring arbitration arises, and the burden shifts to the party opposing arbitration to raise an affirmative defense to the agreement's enforcement. *Ellis*, 337 S.W.3d at 862. Indeed, ". . .a court should not deny arbitration *unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue." *In re D. Wilson Constr.*, 196 S.W.3d at 783 (emphasis original) (internal quotation marks omitted) (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (per curiam) (orig. proceeding)). Further, courts

5

should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration. *Id*. (*see In re Poly–America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)). Here, appellants challenge the trial court's rulings on both motions to compel arbitration. We address each in turn.

## B. The trial court erred by denying appellants' motions to compel

SGB and Seidel, as the parties seeking to compel arbitration,[2] argue that the trial court erred in denying their motions to compel because they met their burden by demonstrating (1) the existence of a valid and enforceable arbitration agreement and (2) that the claims asserted against them fall within the scope of that agreement. *See Rachal*, 403 S.W.3d at 843.

First, it is undisputed that the Residential Construction Contract contains an agreement to arbitrate. Section 17c lists categories of claims and provides those claims "may be submitted to binding arbitration." It also is undisputed that the claims at issue between the parties arise out of the contract.[3] SGB alleges breach of

---

[2] Although Seidel was not a signatory to the contract, he may still compel arbitration in this case because Cleveland brought third-party claims against Seidel that are tied to his official capacity as owner of SGB. Thus, the claims are "in substance" claims against SGB and, as such, fall within the scope of the arbitration provision as set forth in 17(c). *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 189-90 (Tex. 2007) ("Because the plaintiffs' claims against Medina are in substance claims against Merrill Lynch, they must abide by their agreement to arbitrate those claims."); *In re Hous. Progressive Radiology Assocs., PLLC*, 474 S.W.3d 435, 447 (Tex. App.— Houston [1st Dist.] 2015, no pet.). Cleveland cannot circumvent his agreement to arbitrate with SGB by bringing claims against Seidel. In his brief, Cleveland offers no authority to the contrary. Because the claims against Seidel are in substance claims against SGB, our analysis of the trial court's denial of SGB's and Seidel's motions to compel is the same.

[3] Cleveland does not squarely address whether claims between himself and SGB fall within the scope of the arbitration provision of the contract; instead, he asserts that scope need not be addressed because no agreement to arbitrate exists. With respect to Seidel, Cleveland asserts a potential lack of standing to compel arbitration and again asserts that scope is irrelevant because no agreement to arbitrate exists. As set forth, *infra*, we disagree with Cleveland's interpretation of the arbitration clause and its enforceability. And, as stated, *infra* at n.2, Seidel has standing to compel arbitration. By virtue of Cleveland's failure to address scope, it is undisputed that the claims in dispute fall within the scope of the arbitration clause of the contract.

6

contract and prompt payment claims. Cleveland alleges issues against SGB and Seidel, in his official capacity, stemming from performance of the contract. Thus, the claims fall directly within the arbitration clause. The only matter in dispute is whether the arbitration clause is enforceable.

SGB and Seidel argue that arbitration is required if requested. They maintain that the arbitration provision in Section 17(c)—*i.e.*, that any dispute "may be submitted to binding arbitration, but both parties shall also have the right to seek other legal remedies as they see fit and the law allows"—constitutes a binding promise to arbitrate if either party requested it. They maintain to give meaning to all the terms of 17(c) it must be read as providing the scope of claims subject to arbitration, stating that those claims are subject to arbitration upon request, and confirming that, if arbitration not requested, the parties are free to pursue other forms of dispute resolution. In their motions, SGB and Seidel cite to a Texas Supreme Court decision that they contend is controlling and demands arbitration under these circumstances. *In re U.S. Home Corp.*, 236 S.W.3d 761 (Tex. 2007) (per curiam) ("may" submit language requires arbitration when requested). Additionally, SGB and Seidel contend that requiring arbitration when requested is consistent with the rest of the contract. Under Section 25, which is entitled "Entire Agreement," the contract references an agreement for binding arbitration:

> OWNER REPRESENTS THAT OWNER HAS READ AND UNDERSTAND THIS ENTIRE CONTRACT, INCLUDING THE AGREEMENT FOR BINDING ARBITRATION OF DISPUTES RELATED TO THIS CONTRACT (AS AMENDED).

Further, Section 25, provides the builder is "NOT BOUND BY ANY STATEMENT, PROMISE, CONDITION OR STIPULATION NOT SPECIFCIALLY SET FORTH IN THIS CONTRACT." Similarly, Cleveland represented that "NO VERBAL STATEMENT, PROMISE OR CONDITION NOT

7

SPECIFICALLY SET FORTH IN THIS CONTRACT IS BEING RELIED UPON BY OWNER." Moreover, Section 20 of the contract references reimbursement of arbitration fees by the successful party. Finally, SGB and Seidel maintain that Cleveland accepted the contract, along with its terms and conditions, as evidenced by his signature on the final page of the contract.

Cleveland argues that the contract does not empower SGB and Seidel to unilaterally compel arbitration. Cleveland contends that he cannot be compelled to arbitrate because the arbitration clause in the contract uses permissive wording, stating that the parties "may" submit disputes to arbitration. Cleveland asserts that the parties were "permitted" but not "required" to agree mutually at some point in the future to pursue arbitration. According to Cleveland, this interpretation is evidenced by the circumstances surrounding the formation of the contract. In support of his argument, Cleveland submitted the parties' redlined draft of the contract, negotiating the replacement of "shall" with "may" in Section 17(c). Cleveland also maintains that *U.S. Home Corp.*, is inapposite because it involved two agreements, one of which contained a mandatory arbitration clause. Cleveland distinguishes *U.S. Home Corp.* by asserting that the contract in this case requires the parties to subsequently agree to arbitrate. Finally, Cleveland contends that Section 25 of the contract does not dictate arbitration, but "only identifies a procedural structure (*i.e.*, "binding" versus "non-binding") for a means of resolving existing disputes," and is considered after the question of arbitrability is resolved.

We agree with SGB and Seidel that arbitration was required. The plain language of Section 17(c) creates a valid and enforceable mandatory arbitration clause that unambiguously provides that either party may request arbitration. Nothing in the contract suggests arbitration was optional if either side requested it.[4]

---

[4] The cases relied upon by Cleveland expressly require the parties to commit to arbitration

Hence, as interpreted by this court's precedent, this clause constitutes a binding promise to arbitrate if either party requested it. *See Feldman/Matz Interests, LLP v. Settlement Capital Corp.*, 140 S.W.3d 879, 888 (Tex. App.—Houston [14th Dist.] 2004, no pet) ("may" submit language is mandatory for arbitration). In *Feldman/Matz Interests, LLP*, the court explained its interpretation of the "may" submit clause as follows:

> That is merely another way of saying that either party may require the other to arbitrate—not a limitation on how a party may invoke arbitration. Secondly, although the agreement stated that either party "may" submit disagreements to arbitration, a number of the federal circuits—including the Fifth Circuit—have interpreted similar language to mean that either party has the power to require arbitration. *See, e.g., Deaton Truck Line, Inc., v. Local Union 612*, 314 F.2d 418 (5th Cir. 1962); *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir.), *cert. denied*, 519 U.S. 980, 117 S. Ct. 432, 136 L.Ed.2d 330 (1996); *Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n, Local 1969*, 683 F.2d 242, 246–47 (7th Cir. 1982); *Local 771, I.A.T.S.E., AFL–CIO v. RKO Gen., Inc.*, 546 F.2d 1107, 1116 (2d Cir. 1977); *Bonnot v. Cong. of Indep. Unions Local No. 4,* 331 F.2d 355, 359 (8th Cir. 1964). Thus, generally, an agreement to arbitrate is mandatory even though it contains permissive terms such as "may." This interpretation supports the federal scheme to encourage arbitration. We see no reason to depart from the reasoning of these cases.

*Id.*; *see In re U.S. Home Corp.*, 236 S.W.3d at 765 (holding clause that permitted either party to request arbitration and did not require permission from other to be

---

and allow one party to reject such a request. *See Tex. Health Res. v. Kruse*, No. 05-13-01754-CV, 2014 WL 3408636, at \*3 (Tex. App.—Dallas July 11, 2014, pet. denied) (arbitration provision required both parties to subsequently "commit" to arbitration); *Travelers Indem. Co. v. Tex. Mun. League Joint Self-Ins. Fund*, No. 01-08-00062-CV, 2008 WL 2756874, at \*2 (Tex. App.—Houston [1st Dist.] July 17, 2008, no pet.) (after one party requested arbitration, arbitration provision required the other party to accept or reject the request). Here, the contract does not contain this language. Rather, the operative language provides that claims "may be submitted to binding arbitration."

mandatory); *see also Hanover Ins. Co. v. Kiva Lodge Condo. Owners' Ass'n, Inc.*, 221 So. 3d 446, 453–54 (Ala. 2016) ("Most cases throughout the country. . .[find] that use of the term "may" in an arbitration provision generally does not denote permissive arbitration because the arbitration clause would be meaningless.") (citations omitted). Moreover, this construction harmonizes and gives effect to Section 25 of the contract, wherein Cleveland acknowledges "binding arbitration of disputes."

To the extent Cleveland introduced a redlined draft the contract demonstrating changes Cleveland made to the contract before it was executed, such evidence should not have been considered by the trial court as it is precluded by the parol evidence rule. The parol evidence rule is a rule of substantive law. *Lewis v. Adams*, 979 S.W.2d 831, 836 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citations omitted). The parol evidence rule provides that the terms of a written contract cannot be contradicted by evidence of an earlier, inconsistent agreement.[5] *Id*.

Additionally, a written instrument presumes that all prior agreements relating to the transaction have been merged into it and will be enforced as written and cannot be added to, varied, or contradicted by parol testimony. *Smith v. Smith*, 794 S.W.2d 823, 827 (Tex. App.—Dallas 1990, no pet.). The rule is particularly applicable when the written contract contains a recital that it contains the entire agreement between the parties or a similarly-worded merger provision. *Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679 (Tex. App.—Dallas 1984, no writ). Here, the merger clause

---

[5] In his brief, Cleveland argues that "[t]he Contract unambiguously provides solely for permissive arbitration." Thus, any exception permitting admissibility of parol evidence when a writing is ambiguous is not applicable in this case. *See Gonzalez v. United Broth. Of Carpenters and Joiners of Am., Local 551*, 93 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (setting forth exceptions to parol evidence rule when extrinsic evidence may be shown to be admissible).

in Section 25 of the contract prohibits Cleveland from relying on his redlined draft to alter the terms of the contract.

Cleveland attempts to avoid preclusion of his extrinsic evidence (*i.e.*, prior redlined draft) by arguing the Texas Supreme Court's recent decision in *First Bank v. Brumitt* permits the trial court to consider the circumstances surrounding the formation to discern the meaning of an unambiguous contract. *See* 519 S.W.3d 95, 110 (Tex. 2017) ("[T]he parol-evidence rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text." (internal citations omitted)). This case does not fall within the ambit of *Brummit.* Cleveland's suggested construction adds a requirement that is not set forth in the contract, *i.e.*, it requires Cleveland to consent or agree to arbitrate any claims, disputes, or questions that SGB and Seidel have requested to arbitrate. *Brumitt* clearly prohibits extrinsic evidence for such a purpose. "Extrinsic evidence cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated." *Id*. at 110 (citation omitted). "[C]ourts may not rely on evidence of surrounding circumstances to make the language say what it unambiguously does not say." *Id*. The trial court in this case could not rely on extrinsic evidence to create an intent that the contract itself does not express. *Id*.

Because a valid and enforceable arbitration agreement exists and the claims at issue fall within the scope of the agreement, the trial court abused its discretion in denying SGB and Seidel's motions to compel arbitration. *See Feldman/Matz Interests, LLP*, 140 S.W.3d at 888. Accordingly, we sustain SGB's and Seidel's issues.

### III. Conclusion

We reverse the trial court's orders denying SGB's and Seidel's motions to

compel arbitration and remand for further proceedings consistent with this opinion and compelling arbitration.

/s/    John Donovan
           Justice

Panel consists of Justices Christopher, Donovan, and Jewell (Christopher, J., dissenting).