

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00329-CV

_____

FAMOUS WATER COMPANY, L.P., CRAZY BOTTLING COMPANY, LLC, FAMOUS WATER HOLDINGS, LLC, SCOTT ELDER, CAROL ELDER, TROY HUSEMAN, KELLI HUSEMAN, JACK BRADSHAW, JANET BRADSHAW, TOM FIREOVED, AND MIKE MODANO, Appellants

V.

AQUIO SOLUTIONS INTERMEDIATE HOLDINGS, LLC, Appellee

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-327718-21

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

## I. Introduction

At the beginning of 2021, Appellants Famous Water Company, L.P. (FWC), Crazy Bottling Company, LLC (CWC), Famous Water Holdings, LLC (FWH), Scott Elder, Carol Elder, Troy Huseman, Kelli Huseman, Jack Bradshaw, Janet Bradshaw, Tom Fireoved, and Mike Modano agreed in a Letter of Intent (LOI), followed by a Memorandum of Understanding (MOU) several months later, that they would sell a mineral-water business and a parcel of Palo Pinto County real property to Appellee Aquio Solutions Intermediate Holdings, LLC via a set of interrelated agreements. When the deal did not close in August 2021, multi-county litigation ensued, resulting—a year and a half later—in the denial, by the Supreme Court of Texas, of a dominant-jurisdiction question raised in Appellants' petition for writ of mandamus.[1] *See In re Famous Water Co.*, No. 22-0355 (Tex. Dec. 16, 2022) (orig. proceeding); *see also In re Famous Water Co.*, No. 02-22-00103-CV, 2022 WL 1250841, at *1 (Tex. App.—Fort Worth Apr. 27, 2022, orig. proceeding [mand. denied]) (per curiam) (mem. op.).[2]

---

[1]FWH was not brought into this case until April 2022, but it was a defendant (along with the Elders) in Aquio's Palo Pinto County lawsuit in cause number C50090. It and the other appellants sued Aquio in Palo Pinto County in cause number C50109.

[2]The parties requested that the trial court take judicial notice of "certain files and materials." One of these requests included the mandamus petition and record filed in this court and the one filed in the supreme court. The trial court granted the request.

Half a year later, Appellants filed a motion to compel arbitration and to stay the case, asking the trial court to enforce the arbitration clause in Section 8.3 of the parties' two interest purchase agreements (IPAs). Aquio, in turn, sought to compel Appellants' discovery responses on the merits and sought attorney's fees and costs as discovery sanctions.

Following a hearing on September 1, 2023, at which the trial court requested supplemental briefing, the trial court denied Appellants' motion to compel arbitration "[f]or the reasons set forth in the filings and briefing of [Aquio]," denied Aquio's sanctions motion, and granted Aquio's discovery motion. This interlocutory appeal followed.[3] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016, 171.098.

In their first issue, Appellants complain that the trial court erred by denying their motion to compel arbitration, contending that they met their burden to establish the existence of a valid arbitration agreement, that all the parties' claims fall within that agreement's scope, and that Aquio failed to meet its burden to prove a valid defense to enforcement. Among other arguments, Aquio responds that Appellants failed to meet their threshold burden to establish the existence of a valid and enforceable arbitration agreement.

---

[3]Appellants alternatively request that the court consider part of its brief as a mandamus petition, seeking relief from the trial court's order granting Aquio's motion to compel discovery. Because of our resolution of Appellants' first issue, we need not do so. *See* Tex. R. App. P. 47.1.

3

In their second issue, Appellants argue that the trial court erred by granting Aquio's motion to compel discovery because the discovery requests go to the merits of the parties' claims and defenses, which they contend must be arbitrated. Because the trial court did not abuse its discretion by denying Appellants' arbitration motion, we overrule their first issue, do not reach their second issue, and affirm the trial court's order.

## II. Discussion

Because the trial court's order was based on "[t]he reasons set forth" in Aquio's filings and briefing, we will begin our review with the parties' pending claims and filings pertaining to the arbitration dispute before turning to the applicable law on arbitration and our interpretation of the arbitration clause.

### A. Background

In its live pleading at the time of the hearing,[4] Aquio sought recovery from Appellants for breach of contract (including specific performance), sought a declaratory judgment that the LOI and MOU were valid, binding agreements (except for the severable Paragraph 5 of the MOU),[5] and sought attorney's fees and costs. Appellants, whose claims had been transferred into this case from their Palo Pinto

---

[4]A week after the hearing on Appellants' motion to compel arbitration, Aquio filed its fifth amended petition, adding to its breach-of-contract complaints.

[5]Paragraph 5 of the MOU pertained to an agreement to agree: "Buyer and Seller agree to draft language prior to Closing which will preserve the historical nature of the storefront building known as the Famous Water Pavilion and attached garden area . . . ."

County case, sought a declaratory judgment that they had properly terminated the agreements because of Aquio's breaches, sought recovery from Aquio for breach of contract, and sought attorney's fees. Both parties, in their various filings, identified the LOI; the MOU; the two IPAs; and the sale, purchase, and escrow real property agreement (the SPE) as their "integrated" and "interrelated" transaction documents.

Based on the IPAs' identical arbitration clauses, Appellants moved to compel all the parties' claims to be resolved in arbitration, arguing that one document containing an arbitration clause was sufficient to require arbitration of claims arising under the other documents because they were part of one transaction. Aquio responded that Appellants had explicitly and implicitly waived their right to enforce the arbitration clause.

At the hearing, the trial court expressed that the use of "may" in the arbitration clause might be "the key answer" and instructed the parties to file supplemental briefs addressing the issue.[6] In its supplemental brief, Aquio argued that the clause was unenforceable because it "conflicts with the . . . litigation provisions/agreements [in the LOI's governing law/venue clause and the SPE's waiver-of-jury-trial and severability clauses] and is itself encumbered by language that prevents any party from forcing this dispute into arbitration" based on the use of "may." Aquio also argued that Appellants had failed to satisfy the arbitration clause's conditions precedent.

---

[6]The trial court told the parties, "I want every [arbitration] case that's ever talked about 'may' versus 'shall.'"

Appellants argued that the arbitration clause was valid and not limited by "may" and that any issues related to conditions precedent (time limits and notice) were matters of procedural arbitrability for the arbitrator to decide.

## B. Standard of review

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021). Under Texas law, the trial court conducts a summary proceeding—based on the parties' affidavits, pleadings, discovery, and stipulations—to determine an arbitration clause's applicability. *Leland Pennington, Inc. v. Bulls*, No. 02-20-00282-CV, 2021 WL 832690, at *2 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.). The record must be construed in a light favorable to supporting the trial court's ruling. *Id.* at *5. We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).

## C. Arbitration

An arbitration clause is a "specialized kind of forum-selection clause." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S. Ct. 2449, 2457 (1974)). In *Scherk*, the Supreme Court pointed out that an agreement to arbitrate before a specified tribunal "posits not only the situs of suit but also the procedure to be used in resolving the dispute." 417 U.S. at 507, 94 S. Ct. at 2457.

"Texas law encourages parties to resolve disputes through arbitration, but it will not force them to arbitrate unless they have agreed to that alternative." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 508 (Tex. 2015) (footnotes omitted). That is, arbitration, as a matter of contract, is a matter of consent, not coercion, and parties cannot be compelled to arbitrate any controversy unless they have contractually agreed to do so. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 701 (Tex. 2023); *see Jody James Farms, JV v. Altman Grp.*, 547 S.W.3d 624, 629 (Tex. 2018).

Arbitration agreements are interpreted under traditional contract principles: the plain language controls, the court must examine and consider the entire writing in an effort to harmonize and give effect to all the contract's provisions so that none will be rendered meaningless, and no single provision taken alone will be given controlling effect. *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 194–95 (Tex. 2022) (orig. proceeding) (first citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); then citing *Wagner*, 627 S.W.3d at 285; and then citing *Sundown Energy LP v. HJSA No. 3, L.P.*, 622 S.W.3d 884, 888 (Tex. 2021)). Further, context matters when interpreting a contract. *Id.* at 196; *see Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 395 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that parties may place limits on their agreement to arbitrate). Contract construction's primary goal is to effectuate the parties' intent as expressed in the contract. *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 198–99 (Tex. 2022).

We may not rewrite the parties' contract but must construe it as a whole to determine their purposes when they signed it. *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 587 (Tex. 2022).[7] We should construe the contract to avoid a forfeiture, which is disfavored under Texas law, and instead find terms to be sufficiently definite whenever the language is reasonably susceptible to such an interpretation. *Id.* And when we construe an agreement to avoid forfeiture, we may imply terms that can be reasonably implied. *Id.*

Under appropriate circumstances, instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and even if the instruments do not expressly refer to each other. *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020). When appropriate, a court may determine as a matter of law that separate contracts are part of a "single, unified instrument" by determining whether each instrument was a necessary part of the same transaction. *Id.* at 94–95 (cautioning that tethering documents is simply a device to give effect to the parties' intent and cannot be applied "without regard to the realities of the situation").

The arbitration clause at issue here references the Federal Arbitration Act (FAA). Under the FAA, a party seeking to compel arbitration must establish the

---

[7]In *Baby Dolls*, the plaintiff unsuccessfully sought to avoid the contract's arbitration clause by arguing that there was no meeting of the minds on the contract itself based on the inconsistent use of terminology—the words "agreement" and "license." 642 S.W.3d at 587–88.

existence of a valid arbitration agreement and the existence of a dispute within the agreement's scope. *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 376 (Tex. 2023) (quoting *Baby Dolls*, 642 S.W.3d at 585–86). Generally, courts decide these gateway matters. *Id.*; *Baby Dolls*, 642 S.W.3d at 586; *J.M. Davidson*, 128 S.W.3d at 227. The presumption favoring arbitration arises "only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *J.M. Davidson*, 128 S.W.3d at 227; *see Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020) (stating that whether parties have committed their disputes to arbitration is a gateway matter for the court to decide and is controlled by state law governing the validity, revocability, and enforceability of contracts generally (quoting *Jody James*, 547 S.W.3d at 631 & n.12)).

## D. Mandatory versus permissive language

"Mandatory" language in arbitration clauses has generally included "shall" in statements like "Disputes under this Agreement of any nature whatsoever . . . shall be resolved through demand by any interested party to arbitrate the dispute," *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 119 (Tex. 2018) (referring to arbitration clause as "mandatory"),[8] and "[A]ny Claim arising out of or related to the Contract . . .

---

[8]The *Newsome* dispute did not turn on whether the clause was mandatory but rather on the arbitrator's deciding the issues' arbitrability. 569 S.W.3d at 119, 123 ("Here, the courts below have not questioned the validity of the parties' arbitration clause. We thus have no choice but to send this dispute to arbitration for the arbitrator to at least decide arbitrability.").

shall . . . be subject to agreed private arbitration [and] shall be decided by binding arbitration," *G.T. Leach Builders*, 458 S.W.3d at 510.[9]

There are far fewer cases that discuss the use of "may" in arbitration clauses, and sometimes those clauses are held to be mandatory despite the general distinctions between "may" and "shall." *Compare In re U.S. Home Corp.*, 236 S.W.3d 761, 763 (Tex. 2007) (orig. proceeding), *and Feldman/Matz Ints., L.L.P. v. Settlement Cap. Corp.*, 140 S.W.3d 879, 888 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("[A]lthough the agreement stated that either party 'may' submit disagreements to arbitration, a number of the federal circuits—including the Fifth Circuit—have interpreted similar language to mean that either party has the power to require arbitration."), *with G.T. Leach Builders*, 458 S.W.3d at 525 (stating that when joinder provision stated that arbitration "may include" other parties, there was no basis on which to conclude that the parties intended the word "may" to be mandatory rather than permissive), *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011) (stating that "the permissive word 'may' imports the exercise of discretion" in discussion of family law statute), *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 874 (Tex. 2005) (stating, in statutory-interpretation context, that "[t]he words 'may' and 'shall' mean different things, and . . . [t]he context in this case does not require an interpretation of the permissive word 'may' to mean something other than its plain meaning"), Tex. Gov't Code Ann. § 311.016(1)–(3)

---

[9]*G.T. Leach* involved an expansive construction-related dispute and whether the general contractor had expressly or impliedly waived its right to demand arbitration. 458 S.W.3d at 511.

(explaining that "may" creates discretionary authority or grants permission or a power, "shall" imposes a duty, and "must" creates or recognizes a condition precedent and that these constructions apply "unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute"), *Shall*, Black's Law Dictionary (11th ed. 2019) (stating that under the first of five definitions, "shall" means "[h]as a duty to; more broadly, is required to[;] . . . [t]his is the mandatory sense that drafters typically intend and that courts typically uphold"),[10] *and May*, Black's Law Dictionary (11th ed. 2019) (stating that under the first of three definitions, "may" means "[t]o be permitted to").[11]

In *U.S. Home Corp.*, which involved construing two contracts in connection with a home sale, the sales contract stated that any claim "shall be determined by mediation or by binding arbitration," while the warranty book stated that either party "may" request arbitration. 236 S.W.3d at 763, 765. The plaintiffs relied on the

---

[10]In addition to the first definition of "shall," Black's Law Dictionary defines "shall" as (2) "Should (as often interpreted by courts)"; (3) "May[;] . . . [w]hen a negative word such as *not* or *no* precedes *shall*[,] . . . the word *shall* often means *may*. What is being negated is permission, not a requirement"; (4) "Will (as a future-tense verb)"; and (5) "Is entitled to." *Shall*, Black's Law Dictionary (11th ed. 2019). As to the first meaning—has a duty to or is required to—"[o]nly sense 1 is acceptable under strict standards of drafting." *Id.*

[11]In addition to the first definition of "may," Black's Law Dictionary defines "may" as (2) "To be a possibility" and (3) "Loosely, is required to; shall; must." *May*, Black's Law Dictionary (11th ed. 2019). It notes, "In dozens of cases, courts have held *may* to be synonymous with *shall* or *must*, usu. in an effort to effectuate what is said to be legislative intent." *Id.*

11

warranty book's use of "may" to argue that arbitration was not mandatory. *Id.* at 765. The supreme court disagreed and concluded that the two clauses did not render the contracts ambiguous because although the "may" clause allowed either party to request arbitration, "nothing in it suggest[ed] arbitration was optional if either did; to the contrary, the clause constituted a binding promise to arbitrate if either party requested it." *Id.* Because the defendant had requested arbitration, the plaintiffs could not then opt out of it. *Id.*

As in any contract case, whether an arbitration clause can be construed as permissive depends on the language used. *See Travelers Indem. Co. v. Tex. Mun. League Joint Self-Ins. Fund*, No. 01-08-00062-CV, 2008 WL 2756874, at *1 (Tex. App.— Houston [1st Dist.] July 17, 2008, no pet.) (mem. op.). In *Travelers*, the arbitration clause stated,

> Either party *may*, by written request to the other party, seek to arbitrate any dispute arising out of, or related in any way to this Contract or the transactions hereunder, including its formation, termination, and validity, other than disputes with the Property Reinsurer(s) under Article XI, 'Joint or Disputed Loss[,]' which will be arbitrated pursuant to the mandatory binding arbitration provisions of that Article.
>
> . . . *Following receipt of a request for arbitration, the non-requesting party shall, within thirty (30) days by written response, accept or reject such a request.* Once such a written response has been delivered, the parties may not, except by mutual agreement, revoke the decision to proceed with arbitration. Within thirty (30) days after delivery of a written response accepting a request for arbitration, each party shall appoint an arbitrator.

*Id.* (emphases added). The court concluded that the defendant had failed to prove that a valid binding arbitration agreement existed because the agreement used permissive

language—"either party may, by written request to the other party, seek to arbitrate any dispute"—and then allowed the non-requesting party to accept *or* to reject the request. *Id.* at \*2. The court stated, "It is clear that the parties intended that one party could reject the other party's request to seek arbitration," and concluded that to hold that the provision was mandatory would render the rejection language meaningless. *Id.* at \*2–3 ("[T]hey clearly expressed the intent that either party be able to reject the other party's request to seek arbitration.").[12] *Compare Tex. Health Res. v. Kruse*, No. 05-

---

[12]The *Travelers* court distinguished several cases reaching the contrary conclusion when "may" was used because none of the arbitration clauses in those cases contained language that indicated a party could reject a request to seek arbitration. 2008 WL 2756874, at \*3 (distinguishing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 320–21 (4th Cir. 2001); *Am. Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1103 (8th Cir. 1990); *Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Assoc., Loc. 1969, AFL-CIO*, 683 F.2d 242, 246 (7th Cir. 1982); *Loc. 771, I.A.T.S.E., AFL-CIO v. RKO Gen., Inc.*, 546 F.2d 1107, 1115–16 (2nd Cir. 1977); *Bonnot v. Cong. of Indep. Unions Loc. No. 14*, 331 F.2d 355, 359 (8th Cir. 1964); *Deaton Truck Line, Inc. v. Loc. Union 612*, 314 F.2d 418, 421 (5th Cir. 1962); *City of Louisa v. Newland*, 705 S.W.2d 916, 917 (Ky. 1986); *Orthopedic Physical Therapy Ctr. v. Sports Therapy Ctrs., Ltd.*, 621 A.2d 402, 403 (Me. 1993); *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 557 S.E.2d 199, 201 (Va. 2002)).

In *Bankers*, the court stated that a clause providing that "disputes . . . may be referred to arbitration" had the effect of giving the aggrieved party the choice between arbitration or abandonment of his claim and relied on the next four cases cited after *Bankers* in *Travelers* as reaching similar conclusions based on comparable "permissive" language in arbitration agreements: "if both parties agree," "may refer the grievance to arbitration," "may submit to arbitration," and "[t]he obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or abandonment of its claim." 245 F.3d at 321. *But see PCH Mut. Ins. Co. v. Cas. & Sur., Inc.*, 569 F. Supp. 2d 67, 76 (D.D.C. 2008) (distinguishing *Bankers*'s conclusion based on additional language in arbitration clause after "may" and context). In *PCH*, the court noted that the federal cases requiring arbitration when "may" is used generally involve the interpretation of arbitration clauses in the context of collective bargaining

13-01754-CV, 2014 WL 3408636, at *3 (Tex. App.—Dallas July 11, 2014, pet. denied) (mem. op.) (citing *Travelers* for the proposition that "[a]rbitration is permissive when the agreement to arbitrate requires both parties to subsequently agree to submit the issue to arbitration with the option of rejecting arbitration"), *with Greystone Multi-Fam. Builders, Inc. v. Tes Elec., LP*, No. 01-15-00640-CV, 2016 WL 3362208, at *3 (Tex. App.—Houston [1st Dist.] June 16, 2016, no pet.) (mem. op.) ("Arbitration is mandatory when it allows either party to elect to arbitrate, without requiring permission from the other contracting party.").

The use of "may" is not always the determinant. In *Southern Green Builders, LP v. Cleveland*, for example, the arbitration clause stated,

> The Owner and Builder agree that all controversies, claims (and any related settlements), or matters in question arising out of or relating to [the contract, the home construction, any of the builder's acts or omissions, or actual or purported representations or warranties] *may* be submitted to binding arbitration, *but both parties shall also have the right to seek other legal remedies as they see fit and the law allows.*
>
> . . . .
>
> . . . OWNER REPRESENTS THAT OWNER HAS READ AND UNDERSTANDS THIS ENTIRE CONTRACT, INCLUDING THE AGREEMENT FOR *BINDING* ARBITRATION OF DISPUTES RELATED TO THIS CONTRACT (AS AMENDED).

---

agreements, which have a heavy presumption in favor of mandatory arbitration, in contrast to the mere presumption in favor of arbitrability in the non-labor context that "only arises once the Court concludes that a binding agreement to arbitrate exists." 569 F. Supp. 2d at 77.

558 S.W.3d 251, 253–54 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (emphases in italics added). The trial court denied the builder's motion to compel arbitration. *Id.* at 254. Our sister court held that the trial court had erred because nothing in the contract suggested that arbitration was optional if either side requested it and that construction "harmonize[d] and g[ave] effect" to the clause in which the owner acknowledged the "binding arbitration of disputes." *Id.* at 257–58.

The *Southern Green* conclusion drew a dissent. *See id.* at 259 (Christopher, J., dissenting). The dissenting justice disagreed that the arbitration clause was mandatory in light of evidence showing that the builder had agreed to the owner's modifications to the builder's boilerplate contract: the owner had removed nearly the entirety of the mandatory arbitration clause, had changed the words "shall be submitted to binding arbitration" to "may be submitted to binding arbitration," and had added the language that both parties "shall have the right to seek other legal remedies as they see fit and the law allows." *Id.* at 259–60. Because the supreme court permits consideration of deletions from a form contract to determine the parties' intent, because generally "may" is permissive while "shall" is mandatory, and because construing the contract to require mandatory arbitration would render the portion about the right to seek other legal remedies meaningless—"what other legal remedies could the sentence refer to if arbitration was mandatory?"—Justice Christopher would have held that the agreement did not mandate arbitration. *Id.* at 260–61. Justice Christopher pointed out that the use of "may" does not take on a special meaning in an arbitration contract:

15

"As always, the entire contract must be reviewed to see if it is mandatory or permissive." *Id.* at 262; *see Branch Law Firm*, 447 S.W.3d at 395 ("While an arbitration clause standing alone might appear to encompass the claims in question, the court cannot confine its analysis to the construction of that clause alone.").[13]

---

[13]In addition to *U.S. Home Corp.* and *Southern Green Builders*, in the trial court, Appellants relied on *Bonsmara* and the following Texas cases. The *Bonsmara* arbitration clause stated, "Any dispute or controversy arising under, out of, or in connection with or in relation to this cattle[-]feeding agreement and any amendment thereof, or the breach thereof, *may*, at the sole option and discretion of [the other party], be determined and settled by arbitration . . . ." 603 S.W.3d at 388 (emphasis added). But the court did not discuss the clause's use of "may"; instead, the parties' dispute focused on the availability of the Texas Cattle Feeders Association's arbitration program and forum. *Id.* at 388–89, 397–400; *see also Mac Haik Chevrolet, Ltd. v. Parker*, No. 01-22-00685-CV, 2023 WL 1786163, at *2 (Tex. App.—Houston [1st Dist.] Feb. 7, 2023, no pet.) (mem. op.); *Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 440 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 822 (Tex. App.—San Antonio 2009, orig. proceeding).

In *Wells Fargo*, the arbitration clause stated, "Any party to this Agreement or to any Loan Document *may* require that any Dispute be resolved by binding arbitration . . . ." 300 S.W.3d at 822 (emphasis added). However, our sister court did not construe the use of "may" but instead focused on the arguments made in the trial court, which included whether nonsignatories could invoke the clause, whether the clause was discharged in bankruptcy, whether the clause merged into the trustee's deed, and who was bound by it to determine that a valid arbitration agreement existed between the parties. *Id.* at 824–29. Likewise, the clause in *Mac Haik* stated, "Either you or we *may* choose to have any dispute between us decided by arbitration and not in court or by jury trial. Any claim or dispute . . . *shall*, at your or our election, be resolved by neutral binding arbitration and not by a court action." 2023 WL 1786163, at *2 (emphases added). However, the trial court did not address the juxtaposition of "may" and "shall"; the parties instead filed an agreed motion to abate the case and refer it to arbitration. *Id.* Only after a dispute about paying the arbitrator arose, followed by significant delay, did the trial court order that arbitration had been waived. *Id.* at *3. In *Cooper*, one of the parties' agreements provided that either party "may" initiate arbitration to resolve a dispute and another that any dispute not settled within 60 days "shall be finally settled by arbitration." 475 S.W.3d at 440. The court

"Although the parties broadly may agree to arbitrate in one part of the agreement, they also may place limits on the agreement to arbitrate in another part of the agreement." *Branch Law Firm*, 447 S.W.3d at 395. Even though the wording of an arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement in which the parties unambiguously negate or limit the arbitration clause with respect to a given matter in dispute. *Id.*; *see O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 F. App'x 308, 312 & n.6 (5th Cir. 2020) (concluding that there was no meeting of the minds as to arbitration when arbitration clause's language directly conflicted with jurisdiction-and-choice-of-law clause stating that "[a]ny legal action concerning the Agreement will be brought in the state and federal courts" with no

referred to the "broad clause requiring arbitration," but the dispute on appeal pertained not to construction of the arbitration clause but to whether a nonsignatory could compel arbitration, whether direct benefits estoppel could compel other nonsignatories to arbitrate, and whether the appellant had expressly or implicitly waived its right to arbitration. *Id.* at 442–53.

Appellants also referred the trial court to *Deaton Truck Line*, a dispute in the Fifth Circuit about specific performance of an agreement to arbitrate labor disputes or grievances under a collective bargaining contract. 314 F.2d at 421. The provision at issue stated, "If the Union and the Company fail to agree, the dispute *may* be submitted to arbitration and the decision of the arbiter *shall* be final." *Id.* (emphases added). The initial dispute was not on whether to submit to arbitration—the union demanded arbitration, and the company agreed to submit to arbitration but sought to specifically limit its agreement to arbitrate to submitting the contract and briefs to the arbiter without taking any testimony. *Id.* The company subsequently sought to avoid arbitration based on, among other things, the clause's use of "may." *Id.* at 422. Relying on two other union-related cases and without additional discussion, the court stated, "Clearly, however, 'may' should be construed to give either aggrieved party the option to require arbitration." *Id.* at 422–23 ("It is important for labor peace that the processes of arbitration not be permitted to fail.").

17

limiting language suggesting that it only applied to disputes not subject to arbitration, in contrast to other clauses containing such limiting language); *see also Oceanic Cos. v. Kukui'ula Dev. Co. (Haw.), LLC*, 257 P.3d 1221 (Haw. Ct. App. 2011) (concluding that "[t]he juxtaposition of mandatory and permissive language in such proximity and usage [in the arbitration clause] demonstrates an intentional distinction between what is required and what is not required").

**E. The parties' agreements**

On January 28, 2021, the parties signed the LOI to memorialize their discussions for Aquio to acquire the assets or capital stock of CBC, FWH, and FWC. The LOI gave Aquio a period of seven months to have the sole and exclusive option to acquire the assets or capital stock "as set forth in the Purchase Agreement (defined hereafter)." The LOI set out that the agreement's "No Shop" period was a material obligation that—if violated—would make CBC, FWH, and FWC liable to Aquio for all costs incurred by it in any way related to the LOI, the due diligence period, or any matter related thereto as of the date Aquio received actual notice of such violation, plus indemnification of Aquio for all damages, costs, and losses (including attorneys' fees and court costs) related to such violation. In the LOI, the parties agreed to endeavor in good faith to negotiate and enter into either a definitive acquisition or stock purchase agreement during the due diligence period.

At that time, besides a previously signed confidentiality agreement, the LOI represented "the entire agreement among the parties . . . with respect to the subject

18

matter hereof." It included the parties' recognition that the LOI constituted a "legal, valid and binding obligation, enforceable against [each party] in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights and by general principles of equity (whether applied in a proceeding at law or in equity)." The LOI's choice of law was Texas and venue for any dispute relating to the LOI "shall only be proper in the State Courts in Tarrant County."

On June 1, 2021, CBC, FWC, FWH, and the Elders entered the MOU with Aquio. The MOU provided that the Elders and CBC had executed a purchase agreement with Aquio (the CBC IPA); that the Elders and FWC had executed a purchase agreement with Aquio (the FWC IPA); and that pursuant to a sale, purchase, and escrow agreement, FWH would sell, convey, and transfer all of its interest in a parcel of Mineral Wells real property to Aquio (the SPE). The MOU contained a merger clause acknowledging it as "the complete agreement between the Parties with respect to the subject matter contained herein and cannot be varied except by written agreement."

The MOU contained an attorney's-fee provision stating that if any party failed to perform or if a dispute arose concerning the MOU's provisions,

> and an action is filed, the prevailing party in any such action *shall* be entitled to recover from the other party, in addition to any other relief that may be granted, its court costs and reasonable attorneys' fees and disbursements, including such fees and disbursements incurred in connection with any appeal. [Emphasis added.]

19

The MOU also contained a choice of law and venue provision, choosing Texas law and stating that "[a]ny dispute regarding this MOU *shall* only be proper in Tarrant County." [Emphasis added.]

Accompanying the MOU were the two IPAs, also dated June 1, 2021, which were referenced in the MOU and were identical except for the sellers' names. Under Section 5.2(a), the sellers agreed that in a breach of the sellers' obligations before closing, Aquio "will be entitled [to] equitable relief, including injunctive, in addition to all other remedies available at law or in equity."

The IPAs provided for closing at Aquio's Fort Worth office on or before August 5, 2021, with Aquio's option to extend the closing date to August 12, 2021. Among other things, Aquio had to deliver at closing "[a]ll other documents, instruments or writings required to be delivered to Sellers at or prior to Closing pursuant to this Agreement and the [MOU] entered into by and between the parties of even date herewith."

The arbitration clause at issue, set out in the "Miscellaneous" section of the IPAs, stated,

> 8.3    **Dispute Resolution.** The parties herby agree that any dispute regarding the rights and obligations of any party under this Agreement *must* be resolved first, by submitting the matter to mediation with the American Arbitration Association ("AAA") or other third party mediator mutually acceptable to the parties, *and if mediation is unsuccessful, then by arbitration pursuant to this Section 8.3. Within seven (7) days of any party's written notice to the other of its desire to submit any dispute to arbitration, the parties will meet to attempt to amicably resolve their differences and, failing such resolution,*

*the parties may submit the matter to mandatory and binding arbitration* with <u>AAA</u>. The issue(s) in dispute shall be settled by arbitration in Fort Worth, Texas, in accordance with the Commercial Arbitration Rules of AAA, by a single arbitrator. The only issue(s) to be determined by the arbitrator will be those issues specifically submitted to the arbitrator. The arbitrator will not extend, modify or suspend any of the terms of this Agreement. *The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1–16, and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof.* A determination of the arbitrator shall be by majority vote.

. . . .

This agreement to arbitrate is specifically enforceable. Judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction. The decision of the arbitrator within the scope of the submission is final and binding on all parties, and *any right to judicial action on any matter subject to arbitration hereunder hereby is waived (unless otherwise provided by applicable law), except suit to enforce this arbitration award or in the event arbitration is not available for any reason.* If the rules of the AAA differ from those of this Section 8.3, the provisions of this Section 8.3 will control. The costs of arbitration shall be shared by the parties. [Emphases added.]

Immediately following Section 8.3 was Section 8.4, "**Remedies at Law or in Equity**," stating that if any of the sellers' representations were materially untrue, misleading, or breached, Aquio

*may proceed to protect and enforce its rights by suit in equity or action at law*, whether for the specific performance of any term contained in this Agreement or for an injunction against the breach of any such term or in aid of the exercise of any power granted in this Agreement, or to enforce any other legal or equitable right of [Aquio], or to take any one or more of such actions. [Emphasis added.]

The IPAs further provided for Texas law to govern and contained a merger clause that the agreement and "all exhibits and schedules attached herein" embodied the

21

parties' entire agreement, and that the headings in the agreement were for convenience only and not part of the agreement.

One of the exhibits to the FWC IPA was an unexecuted employment agreement between FWC and Carol Elder providing that, in the event of breach, the company was entitled to immediate injunctive relief "in addition to any other legal or equitable relief" to which it would be entitled. Choice of law was Texas, and venue was set in Tarrant County. An unexecuted employment agreement between CBC and Scott Elder, with the same provisions, was included as an exhibit to the CBC IPA.

Another exhibit to each IPA was an unexecuted non-competition agreement, and it provided that the agreement was governed by Texas law and that

> [e]ach of the parties hereby irrevocably submits in any suit, action or proceeding arising out of or related to this Agreement *to the exclusive jurisdiction of the courts of general jurisdiction located in Tarrant County, Texas* and waives any and all objections to jurisdiction that it may have under the laws of the State of Texas or the United States. [Emphasis added.]

It further stated,

> The non-prevailing party *shall* be liable to, and will pay the prevailing party, for all costs and expenses, including, but not limited to, reasonable attorneys' fees incurred by the prevailing party in the enforcement, defense or interpretation in any respect of any of its rights under this Agreement, *whether in litigation or otherwise*. [Emphasis added.]

The FWH IPA also contained as an exhibit the SPE, executed by the parties on June 15, 2021. The sale was made contingent on the "simultaneous closing of those certain interest purchase agreements" and spelled out the seller's and buyer's remedies. It contained a merger clause stating that it was the entire agreement

22

between the parties "relating to the transaction contemplated hereby." And it contained an attorney's fees clause, stating,

> Should any party hereto employ an attorney for purpose of enforcing or construing this Agreement, or any judgment based on this Agreement, *in any legal proceeding whatsoever, including insolvency, bankruptcy, arbitration, declaratory relief or other litigation*, the prevailing party *shall* be entitled to receive from the other party or parties thereto reimbursement for all reasonable attorneys' fees and all costs, *whether incurred at the trial or appellate level, including but not limited to service of process, filing fees, court and court reporter costs, investigative costs, expert witness fees and the cost of any bonds, whether taxable or not*, and such reimbursement *shall* be included in any judgment, decree or final order issued in that proceeding. The "prevailing party" means the party in whose favor a judgment, decree, or final order is rendered. [Emphases added.]

This agreement also contained a jury-trial waiver, stating,

> PURCHASER AND SELLER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY *IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH* . . . . Each party hereby authorizes and empowers the other to file this Section 16.14 and this Agreement with the clerk or judge of any court of competent jurisdiction as a written consent to waiver of jury trial. [Emphasis in italics added.]

## F. Analysis

Appellants argue that they submitted an authenticated copy of the parties' IPAs that both provide that "any dispute regarding the rights and obligations of any party under this Agreement must be resolved . . . by arbitration" and that "[t]his agreement to arbitrate is specifically enforceable," thus meeting their burden to establish the arbitration agreement's existence. They further contend that Aquio ignores relevant

23

provisions in Section 8.3 that make arbitration mandatory despite the use of "may," directing us to the words "mandatory," "final," and "binding" to support their argument that arbitration is mandatory rather than permissive. They claim that an interpretation of permissive arbitration would render Section 8.3's inclusion meaningless.

Appellants also contend that Section 8.3 does not conflict with the venue provisions in either the LOI or the SPE because Section 8.3 can be construed to fix venue in Tarrant County courts if arbitration is waived or for proceedings to enforce an arbitration award. They argue that the IPAs are dated four months after the LOI, which was superseded by the MOU, and that both IPAs contain a merger clause; thus, the LOI's venue provision did not supersede or revoke Section 8.3's arbitration agreement. And they point out that the SPE specifically provides for the recovery of attorney's fees and costs by the prevailing party in "arbitration."[14]

Aquio responds that Appellants failed to meet their threshold burden.

We construe the parties' various instruments together because they were generated for the same purpose and same transaction. *See Rieder*, 603 S.W.3d at 94–95. Having closely reviewed the parties' agreements, we agree with the trial court that—to the extent that considering the remaining instruments does not demonstrate a failure

---

[14]Arbitration, in that context, is part of a sentence awarding to the prevailing party reimbursement for attorney's fees and all costs "in any legal proceeding whatsoever, including insolvency, bankruptcy, arbitration, declaratory relief or other litigation."

of the "meeting of the minds"—the arbitration clause is permissive rather than mandatory. To hold otherwise would ignore substantial other provisions in the parties' instruments and their various usages of "shall" instead of "may":

- The LOI did not mention arbitration, provided that it was enforceable "in a proceeding at law or in equity," and stated that venue for any dispute related to it "shall only be proper" in the state courts.

- The MOU did not mention arbitration but provided that in the event of a dispute, if "an action is filed," the prevailing party would be entitled to recover "its court costs and reasonable attorneys' fees," including appeal.

- IPA Section 8.4, immediately below the arbitration clause at issue, stated that in the event of breach, Aquio "*may* proceed to protect and enforce its rights by suit in equity or action at law."[15] [Emphasis added.]

- The IPAs incorporated all the exhibits attached to them. The two unexecuted employment agreements attached to the IPAs referenced legal and equitable relief under Texas law in Tarrant County.

---

[15]Appellants do not address this provision in their opening brief. Aquio points it out in its appellee's brief. In their reply brief, Appellants contend that Aquio waived this argument because it was not raised in the trial court, ignoring that all the instruments were before the trial court, which was concerned with the construction of "may," the same verb used in Section 8.4. Appellants also argue in their reply brief that Section 8.4 works with Section 8.3 to authorize the arbitrator to award these remedies, relying on the section's heading and ignoring the IPAs' provision that the headings are for convenience only and not part of the agreement.

- The unexecuted noncompete agreements attached to the IPAs provided that each party "irrevocably submit[ted] in any suit, action or proceeding . . . to the exclusive jurisdiction of the courts of general jurisdiction located in Tarrant County" and made the nonprevailing party liable for reasonable attorney's fees "whether in *litigation or otherwise*." [Emphasis added.]

- The executed SPE contained an attorney's fee clause that applied to "*any* legal proceeding whatsoever, including . . . arbitration, declaratory relief or other litigation" and covered reasonable attorney's fees and costs "whether incurred at the trial or appellate level." [Emphasis added.]

- The executed SPE also contained a jury-trial waiver "in respect of any litigation based hereon, arising out of, under or in connection with this agreement or any documents contemplated to be executed in connection herewith."

Because we must construe the parties' contract as a whole, *see Baby Dolls*, 642 S.W.3d at 587, using its plain language and considering its context, *see Whataburger*, 645 S.W.3d at 194, we agree with the trial court that "may" as used here is permissive rather than mandatory, indicating that the parties—particularly Aquio—*could* seek alternative dispute resolution but were not required to do so. Contrary to Appellants' arguments, we cannot give Section 8.3—a single provision found in two of the multi-part agreements—controlling effect in light of the remaining instruments, particularly as they show that the parties understood how to use "shall" in those various

26

instruments if "shall"—rather than "may"—is what they intended. *See id.* Further, Section 8.4—immediately below the arbitration clause—expressly gave Aquio the right to sue in court.

Accordingly, we overrule Appellants' first issue and do not reach their remaining arguments or their second issue. *See* Tex. R. App. P. 47.1.

### III. Conclusion

Having overruled Appellants' first, dispositive issue, we affirm the trial court's order, lift our September 20, 2023 stay, and remand the case for further proceedings.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: June 13, 2024